IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA,
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re:<br><br>EVAN PHILLIP JOWERS,<br><br>    Debtor. | Case No: 24--13584-MAM<br><br>Chapter 11 |
| COUNSEL HOLDINGS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>EVAN PHILLIP JOWERS,<br><br>    Defendant. | Adv. Case No.: 24-01338-MAM |

**COUNTER-DEFENDANT COUNSEL HOLDINGS, INC.'S
MOTION TO DISMISS OR ABSTAIN FROM HEARING COUNTERCLAIM**

The Plaintiff and Counter-defendant, Counsel Holdings, Inc., by and through undersigned counsel, files *Counter Defendant Counsel Holdings, Inc.'s Motion to Dismiss or Abstain from Hearing Counterclaim* and as grounds therefore, states as follows:

**Factual and Procedural Background**

1. Counsel Holdings, Inc. is in the legal recruiting business and is the successor by merger to MWK Recruiting, Inc. ("MWK").

2. Evan P. Jowers ("Jowers" or "Debtor") was employed by MWK as a legal recruiter beginning in April 2006 and in connection therewith entered into an employment agreement which, among other provisions, contained confidentiality, non-compete and non-solicitation covenants.

3. Before resigning in December 2016, and following his resignation, Jowers committed a number of unlawful acts by diverting prospective candidates from MWK to a competing entity and by misappropriating MWK's trade secrets.

4.     As a result, MWK brought an action against Jowers in the United States District Court for the Western District of Texas, Case No. 1:18-CV-444-RP for misappropriation of trade secrets and breach of the non-competition and non-solicitation covenants contained in the employment agreement (the In addition, MWK asserted claims for the failure of Jowers to timely repay two loans that MWK extended to Debtor while employed with MWK

5.     On September 15, 2022, the Texas court entered its *Findings of Fact and Conclusions of Law*, and on September 19, 2022, entered the *Final Judgment*, pursuant to which, Jowers owes to Counsel Holdings $3,640,132.60, plus interest of $361.02 per day, for theft of trade secrets and various breaches of his employment contracts with MWK, and as a result of the breaches of the two loans.

6.     On July 25, 2023, the District Court entered its *Amended Final Judgment* awarding damages of $515,326.20 for the misappropriation of trade secrets, $3,028,841.72 for the breach of the employment agreement, $26,204.90 for breach of the first loan and $15,759.78 on the second loan claim. In addition to awarding $155,455.30 as prejudgment interest associated with the misappropriation of trade secrets, and $671,294.33 in prejudgment interest in connection with the breach of the employment agreement.

7.     On January 29, 2024, the District Court awarded Counsel Holdings, Inc. attorney fees of $1,905,335.00 and costs of $19,515.32 in connection with that awarded in the *Amended Final Judgment*.

8.     After awarding the attorney fees and costs, the District Court appointed a receiver to pursue satisfaction of the amounts due.

9.     Jowers appealed his liability under the *Amended Final Judgment* to the Fifth Circuit Court of Appeals, Case No. 22-50936, and lost when the Court of Appeals affirmed the *Judgment* in an unpublished 3-0 opinion on April 1, 2024.

*Adv. Case No.: 24-01338-MAM*

10. Jowers filed a motion for rehearing in the appeal on April 17, 2024, the same day he filed for bankruptcy relief.

11. As a result of his bankruptcy filing and in light of the detailed findings made by the Texas court regarding Debtor's unlawful conduct in misappropriating trade secrets and breaching the non-compete provisions, Counsel Holdings commenced the above-captioned adversary against the Debtor objecting to the dischargeability of these debts under § 523(a)(4) and (6).

12. In response to the adversary complaint, Debtor asserted a counterclaim under various provisions of Florida Consumer Credit Protection Action, Fla. Stat. §§559.55-.785 (the "FCCPA").

## Summary of the Arguments

Debtor's counterclaims under the FCCPA fall squarely within the holding of *Stern v. Marshall*, because: (1) the counterclaims are entirely based upon state law; (2) the adjudication of the counterclaims is entirely independent of federal bankruptcy law; and (3) the counterclaims are not resolvable by a ruling on Creditor's proof of claim. *Stern v. Marshall*, 131 S. Ct. 2594, 2603-04 (2011). As such, it would be a violation of Article III of the Constitution if the Court were to issue a final judgment on the Debtor's counterclaims.[1] Because the Court lacks adjudicatory authority over the counterclaims, the Court should exercise its authority under 28 U.S.C. 1334(c)(1) to abstain from hearing the counterclaims. But even if this Court wanted to exercise its limited adjudicatory authority over these claims, Debtor fails to state claims for which relief can be granted because the statutory provisions invoked by Debtor only pertain to consumer debts, which the debts in question are not. Further, Debtor's claims fail on the pleadings because the statements at issue are protected by Florida's absolute litigation privilege.

---

[1] Counsel Holdings states, as required by Rule 7012, that it does not consent to entry of a final order or judgment by the Bankruptcy Court with respect to the counterclaim.

3

I. **Lack of Adjudicatory Authority**

Debtor's counterclaim contains three counts, each asserted under the FCCPA. As will be discussed in greater detail below, Debtor's claims fail as a matter of law because the debts at issue are not consumer debts and the statements at issue were all protected by privilege. But this Court should not reach those issues. For the Supreme Court's decision in *Stern v. Marshall*[2] dictates that a bankruptcy court may not constitutionally exercise adjudicatory authority over a state law counterclaim such as the one asserted by Debtor in this case which would not be resolved in the process of ruling on a creditor's proof of claim.[3] Florida bankruptcy judges have "routinely held that FCCPA actions…are only 'related to' a case under title 11."[4] Here, these non-core FCCPA counterclaims fall squarely within the holding of *Stern*.

Plaintiff's three counts are all based on the FCCPA. Therefore, federal question jurisdiction is not present. Further, there is no basis for federal diversity jurisdiction over these claims. Although there is diversity of citizenship between Debtor and Creditor, the amount in controversy does not exceed $75,000.  See, **Exhibit "A"**, Jowers's *Amended Motion to Transfer Case to the County Court Small Claims Division Pursuant to Rule 1.060*.

II. **Permissive Abstention**

Under 28 U.S.C. § 1334(c), a bankruptcy court has the discretion to abstain from hearing certain proceedings. The abstention doctrine distinguishes between mandatory abstention under § 1334(c)(2) and permissive abstention under § 1334(c)(1). Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

---

[2] 564 U.S. 462 (2011).
[3] *Id*. at 503.
[4] *In re Richard Carlton Peacock II*, 455 B.R. 810 (Bankr. M.D. Fla. 2011) (cleaned up).

4

Courts considering relief under this section consider similar factors. These include: (1) the effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, (12) the presence in the proceeding of non-debtor parties, (13) comity, and (14) the possibility of prejudice to other parties in the action. *E.S. Bankest, LLC v. United Beverage Florida, LLC* (*In re United Container LLC*), 284 B.R. 162 (Bankr. S.D. Fla. 2002) (citing authority).

### III.    Failure to State Claims for which Relief Can be Granted

Should this Court conclude that it has jurisdiction to adjudicate Debtor's counterclaims, from a review of the specific factual allegations, it is apparent that the Debtor fails to state claims for which relief can be granted. As a result, Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable herein pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure (2024), calls for the dismissal of the counterclaim in its entirety.

The statements the Debtor alleges were in violation of the FCCPA – statements made by Mr. Kinney to one of the Debtor's attorneys during settlement negotiations – are absolutely

privileged under Florida's litigation privilege. This was previously found by the Florida state court that dismissed Debtor's claims without prejudice.[5]

Mr. Jowers also fails to state a claim under the FCCPA because the allegedly tortious statements were not related to consumer debt transactions as required by the FCCPA and, even if they were, the allegations do not support a judgment for any action prohibited by the FCCPA.

According to the complaint, Mr. Kinney and MWK violated the FCCPA when Mr. Kinney, then on behalf of MWK, told Debtor's counsel, Mr. Cole, that MWK would use every means at its disposal to execute on the Texas judgment against Debtor, as well as against parties to whom Debtor fraudulently transfers his assets.

**A. The statements made by Mr. Kinney are all entitled to "absolute immunity" under Florida's litigation privilege.**

All the alleged tortious statements of Mr. Kinney to Mr. Cole are entitled to the absolute immunity conferred by Florida's litigation privilege. Florida law provides complete judicial immunity "to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Echevarria,* 950 So. 2d at 384. The Florida Supreme Court has made clear that the privilege extends to statutory causes of action: "The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." *Id.* As found by the Florida state court, from the face of the counterclaim, it is clear that Mr. Kinney was communicating with Mr. Cole, an attorney for Debtor, related to settlement of ongoing litigation. *Counterclaim*, ¶¶16-18. This is enough to bar Debtor's claims.

---

[5] In an attempt to dissuade Counsel Holdings from pursuing satisfaction of the amounts due from Jowers, Jowers filed a frivolous lawsuit in the Florida state court, a forum far from Counsel Holdings' location, in which Jowers alleged the same FCCPA violations as set forth in the counterclaim at issue herein. After extensive briefing and argument before the state court, the case was dismissed. Attached hereto as **Exhibit "B"** is a copy of state court *Order.*

Florida's expansive litigation privilege extends not only to filings made to a court itself, but to any "defamatory statement or other tortious behavior ... so long as the act has some relation to the proceeding." *Levin*, 639 So.2d at 608 (emphasis added). "The sending of a letter from one attorney to opposing counsel, informing the latter that the former was taking over an existing case and discussing various issues such as amendments of pleadings and scheduling of mediation, is a quintessential example of 'an act that occurs during the course of a judicial proceeding [and] has some relation to the proceeding.'" *Acosta v. Gustino*, Case No: 6:11-cv-1266-Orl-31GJK, at *7-8 (M.D. Fla. May 2, 2014) (citing *Kinsey v. MLH Fin. Services, Inc.,* 509 Fed. Appx. 852, 853-54 (11th Cir. 2013) (FDCPA case). "Florida law suggests that the Florida courts would agree that 'events taking place outside the courtroom during discovery or settlement discussions are no less an integral part of the judicial process, and thus deserving of the protection of the [litigation] privilege, than in-court proceedings." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004). For the foregoing reasons, the counterclaims should be dismissed.

**B. The claims fail because Mr. Jowers's debt is not consumer debt.**

The debts Mr. Kinney was referring to in his emails to Mr. Cole on September 22, 2022, are not consumer debts within the meaning of the prohibitions of section 559.72. This is a threshold requirement for each alleged violation under section 559.72. Thus, to establish a violation of Section 559.72, Debtor must first plead and prove that the $3.6 million he owes to MWK under the Texas judgment (which was the subject of the allegedly tortious email messages from Mr. Kinney to Mr. Cole) is "consumer debt" within the meaning of Section 559.55(6) of the FCCPA, which is defined as a "transaction in which the money, property, insurance, or services which are the subject of the transaction" was "<u>primarily</u> for personal, family, or household purposes…". Fla. Stat. 559.55(5) (emphasis added).

7

Of the $3,640,132.60 owed (not including interest), $515,326.20 is for misappropriation of trade secrets, $3,082,841.72 is for breach by Debtor of his employment agreement's restrictive covenants, $26,204.90 is for failure to repay a forgivable loan that Debtor received as compensation for services, and $15,759.78 is for failure to repay a revolving line of credit Debtor used to pay for what he has described as business expenses. The only component of the Texas judgment debt that even arguably could have been for "personal, family, or household purposes" is the portion related to the revolving line of credit, a mere 0.4% of the total. This is not enough to make the debts "primarily" consumer debts.

### C. The Facts as Alleged Fail to State Claims Under §559.72(8), (9), and (14)

All three counts allege violations of §559.72(8) and (9), with each count directed to each of the three communications contained in paragraphs 15-17 the *Counterclaim*. Count II also seemingly alleges additional violations, for it includes the language from paragraph (14) of §559.72, and similarly, Count III includes the language from paragraph (7).

Under all of these provisions a person shall not do the following in connection with collection of a "consumer" debt:

> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.
>
> (8) Use profane, obscene, vulgar, or willfully abusive language in communicating with the debtor or any member of her or his family.
>
> (9)   Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.
>
> …
>
> (14) Publish or post, threaten to publish or post, or cause to be published or posted before the general public individual names or any list of names of debtors,

>commonly known as a deadbeat list, for the purpose of enforcing or attempting to enforce collection of consumer debts.

Fla. Stat. §559.72(7)-(9), and (14).

The statements were made to Debtor's attorney, not to the debtor or any member of his family, as required by paragraph (7) and (8) and of §559.72. Moreover, the statements made by Mr. Kinney or MWK were, as a matter of law, not profane, obscene, vulgar, or willfully abusive. Under *Jeter v. Credit Bureau, Inc.*, the language used in the instant case does not come close to the level of offensiveness that "might encompass name-calling, racial or ethnic slurs, [or] other derogatory remarks which are similar in their offensiveness to obscene or profane remarks." 760 F.2d 1168, 1178 (11th Cir. 1985).; *see also Meininger v. Green Tree Servicing, LLC*, No. 8:11-CV-2006-T-33, 2012 WL 1166161, at *4 (M.D. Fla. Apr. 6, 2012) ("In accordance with *Jeter* and its progeny, the Court finds that the terms 'loser' and 'deadbeat' may be considered rude and unpleasant, but do not rise to the level of willfully abusive language similar in offensiveness to obscene and profane remarks required by the FDCPA and FCCPA.")..

Turning to paragraph (9), Debtor must allege that the debt is invalid and that the debt collector had actual knowledge that the debt was invalid. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010) ("Section 559.72(9) of the FCCPA requires a plaintiff to demonstrate that the debt collector defendant possessed *actual knowledge* that the threatened means of enforcing the debt was unavailable."). Here, Debtor does not allege that Mr. Kinney and MWK had the requisite knowledge. Indeed, the statements made by Mr. Kinney reflected a sound belief the debts were valid, as the judgment was affirmed on appeal, and that actual avenues for enforcement he believed existed and which do in fact exist. Specifically, Mr. Kinney was communicating to Mr. Jowers's counsel that MWK will pursue fraudulent transferees, even against Mr. Jowers's mother, to the extent of seizing assets from them if necessary. The threat of seizure

9

of a vehicle from a judgment debtor or his fraudulent transferee by a law enforcement officer, is unremarkable from a legal standpoint – such seizures occur regularly. Regardless of whether Mr. Jowers and his counsel believe that MWK can obtain judgment against fraudulent transferees of Mr. Jowers's assets and execute on those assets, MWK and Mr. Kinney believe (and always believed) that the threatened means of enforcement are available, and the *Counterclaim* does not assert otherwise. Thus, the *Counterclaim* fails to state claims under §559.72(9).

Regarding the statutory language found in paragraph (14) of §559.72, prohibiting the publishing or posting or causing the publishing or posting of certain information, the statute requires that it published or posted to the "general public."

In this case, the statements on which Debtor bases all of his counterclaims were made to Debtor's attorney, not to the general public and therefore are not actionable. *Williams v. Salt Springs Resort Ass'n*, 298 So. 3d 1255 (Fla. 5th DCA 2020). The facts in *Salt Springs* are quite different than those in the case at bar.

In *Salt Springs*, the appellate court reversed the lower court's dismissal of a complaint brought by a condominium unit owner against its association stemming from the association's posting of a list of all unit owners who owed the association for past due assessments, a list that was made available to over 100 unit owners. Dismissing the claim brought under §559.72(14), the trial court held that an obligation owed to a condominium association was not a consumer debt under the FCCPA. The appellate court disagreed and reversed, *id.* at 1260, finding that a complaint alleging the posting of a list such as the one sent by the association to all 100 unit owners was a posting to the general public, stated a cause of action under paragraph (14) of the statute. *Id.* at 1258. Nothing of the sort is alleged by Debtor to have occurred in this case. As such, Count III fails to state a cause of action under §559.72(14) and should be dismissed.

*Adv. Case No.: 24-01338-MAM*

WHEREFORE, the Plaintiff, by and through undersigned counsel, requests that this Court grant this *Motion* and grant the Plaintiff any further relief this Honorable Court deems just and proper.

Dated this 25th day of September, 2024.

**LORIUM LAW**
*Attorneys for Plaintiff/Counter-defendant*
101 N.E. Third Avenue, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 462-8000
Facsimile: (954) 462-4300

By: */s/ Jason E. Slatkin*
Jason E. Slatkin
Florida Bar No. 040370
jslatkin@loriumlaw.com

## Certificate of Service

I CERTIFY that a true copy of the foregoing has been served via email through the Court's CM/ECF system to David Ray, Esq., dray@draypa.com, draycmecf@gmail.com, and simone.draypa@gmail.com on this 25th day of September, 2024.

*/s/ Jason E. Slatkin*
Jason E. Slatkin

# EXHIBIT "A"

IN THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

CASE №:012022CA003042XXXXXX

EVAN JOWERS,

**Jury Trial Demanded.**

    Plaintiff,

v.

ROBERT E. KINNEY, and
COUNSEL HOLDINGS, INC.,

    Defendants.

_____/

**AMENDED MOTION TO TRANSFER CASE TO THE COUNTY COURT
SMALL CLAIMS DIVISION PURSUANT TO RULE 1.060**

Pursuant to Florida Rule of Civil Procedure 1.060, Plaintiff respectfully files this Motion to Transfer Case to the County Court, Small Claims Division Pursuant to Rule 1.060. In support of this Motion, Plaintiff states:

1. This is an active case which involves a debt collectors (and the purported successor in interest to MWK Recruiting, Inc.) that threatened Plaintiff and his family. *Brandal v. State Farm Mut. Auto. Ins. Co.*, 310 So. 2d 780, 781 (Fla. 2d DCA 1975) (order granting motion to dismiss for failure to state a claim is not a final judgment); *Hancock v. Piper*, 186 So. 2d 489, 490 (Fla. 1966) ("an order

dismissing a cause but granting additional time in which to file an amended complaint is nothing more than an interlocutory order and . . . the [trial] court still has control of the litigation.).

2. The alleged consumer debt arose from loans extended to Plaintiff. Defendant Robert Kinney and Counsel Holdings, Inc. served as a debt collector and threatened Plaintiff and his family. They both directed his harm into the State of Florida and knowingly attempted to collect that debt against Plaintiff, who at all material times was present in the State of Florida, was a Florida resident, and Florida citizen.

3. While this action was filed in the Circuit Court Division upon further investigation of the claim, this Court lacks subject matter jurisdiction over the cause. This is because the amount in controversy does not exceed $50,000. §§ 26.012; 34.01 Fla. Stat.

4. Under Florida Small Claims Court Rule 7.010(b), and section 34.01, Florida Statutes, cases that do not exceed $50,000 should be assigned to the County Court—and cases that do not exceed $8,000 should be assigned to the small claims division of the Court. Because this case does not involve a claim and controversy that exceeds $50,000, this Court no longer has jurisdiction to adjudicate this case. § 26.012 Fla. Stat. ("Circuit courts shall have exclusive

original jurisdiction . . . In all actions at law not cognizable by the county courts[.]"

5. Pursuant to Rule 1.060, the Court should transfer the case "to the proper court within said county by the same method as provided in rule 1.170(j)", *i.e.*, it should be transferred to the County Court, Small Claims Division. *See Sullivan v. Nova Univ.*, 613 So. 2d 597, 600 (Fla. 5th DCA 1993) (if plaintiff does not establish that the amount in controversy exceeds the jurisdictional threshold, "the case should be transferred to county court."); Fla. Sm. Cl. R. 7.010(b) (the County Court's Small Claims Rules apply to civil controversies that do not $8,000 exclusive of costs, interest, and attorneys' fees.); § 26.012(2)(a), Fla. Stat. (Circuit courts shall have exclusive original jurisdiction: In all actions at law not cognizable by the county courts.); § 34.01, Fla. Stat. (In cases filed between 2020 and 2023, the County Court's jurisdictional amount is limited to $30,000 exclusive of costs, interest, and attorneys' fees.).

**WHEREFORE**, pursuant to Rule 1.060, Plaintiff respectfully moves this Court transfer this case to the County Court, Small Claims Division.

3

DATED:  October 5, 2023               Respectfully Submitted,
                                      **ZERMAY LAW, P.A.**

                                      */s/Zachary Z. Zermay*
                                      Zachary Z. Zermay, Esq.
                                      Florida Bar № 1002905
                                      1200 Fourth Street #1102
                                      Key West, Fl 33040
                                      Email: zach@zermaylaw.com
                                      Telephone: 239-699-3107
                                      *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 5, 2023, I electronically filed the foregoing document with the Clerk of the Court using Florida Court's E-Filing Portal and all counsel of record have been served via transmission of Notice of Electronic Filing generated by Florida Court E-Filing Portal or in some other authorized manner.

                                      **ZERMAY LAW, P.A.**

                                      */s/Zachary Z. Zermay*
                                      Zachary Z. Zermay, Esq.

# EXHIBIT "B"

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA
GAINESVILLE DIVISION

EVAN JOWERS,

    Plaintiff,

v.                                              Case No.: 01-2022-CA-3042, Division K

ROBERT E. KINNEY, and
MWK RECRUITING, INC.,

    Defendants

---

## ORDER

THIS CAUSE came before the Court on May 31, 2023 upon Robert E. Kinney's ("**Mr. Kinney's**") Motion to Dismiss the Original Complaint (the "**Motion**"), and the joinder of MWK Recruiting, Inc. (now known as Counsel Holdings, Inc.) ("**MWK/Counsel**") Having considered the Motion, the joinder, Plaintiff's Response and Affidavit in Opposition and Kinney's Reply in support of the Motion, and after hearing the arguments of the parties at the May 31, 2023, hearing, the Court finds and concludes as follows:

Mr. Kinney and MWK/Counsel contested jurisdiction by submitting an affidavit calling into question the basis for personal jurisdiction over them, at which time, the burden shifted to Plaintiff to present evidence demonstrating that the alleged actions of Mr. Kinney and MWK/Counsel constituted sufficient contacts with the State of Florida such as to permit the Court's exercise of jurisdiction over them. The alleged statements were made by Mr. Kinney while located in Texas to an attorney for Plaintiff located in California. Mr. Jowers has

failed to meet his burden. The Original Complaint is therefore DISMISSED because the Court lacks personal jurisdiction over defendants Mr. Kinney and MWK/Counsel.

1. The Court further finds that Florida's absolute litigation privilege applies to the allegations contained in the Original Complaint because the statements Mr. Kinney allegedly made to Plaintiff's counsel in California, Kevin Cole, were made in the course of settlement discussions related to ongoing litigation. As such, those statements were absolutely privileged and may not form the basis for this lawsuit. Therefore, the Original Complaint is DISMISSED on the basis of the litigation privilege.

2. The Court's dismissal of the Original Complaint is without prejudice to the Plaintiff's refiling of amended complaint containing sufficient allegations to establish in personam jurisdiction over the Defendants and allegations that take the above-referenced statements outside of the litigation privilege, should he wish to do so; however, any amended complaint must be filed in this Court. Plaintiff is ENJOINED from refiling the same allegations against Mr. Kinney, MWK/Counsel, or any other person in privity with them anywhere in the State of Florida other than in Alachua County at any time in the future, to the extent such allegations arise out of the same or similar ones on the Original Complaint.

**DONE AND ORDERED** on Monday, July 10, 2023.



Gloria R. Walker, Circuit Judge
01-2022-CA-003042 07/10/2023 11:19:22 AM

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that copies have been furnished via filing with the Florida Courts E-Filing Portal on Monday, July 10, 2023, to the following:

Charisma Calloway, Judicial Assistant
01-2022-CA-003042 07/10/2023 02:40:25 PM