UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

In re

EVAN PHILLIP JOWERS,                                Chapter 11

             Debtor.                                Case No. 24-13584-MAM
_____/

COUNSEL HOLDINGS, INC.,

             Plaintiff,
v.                                                Adv. Pro. No.: 24-01338-MAM

EVAN PHILLIP JOWERS,

             Defendant.
_____/

**DEFENDANT'S AMENDED ANSWER,
<u>AFFIRMATIVE DEFENSES, AND COUNTERCLAIM</u>**

Evan Phillip Jowers ("<u>Defendant</u>"), by and through undersigned counsel, hereby

answers the adversary complaint (the "<u>Complaint</u>") of Counsel Holdings, Inc. (the

"<u>Plaintiff</u>"), as follows:

    1.     Admitted.

    2.     Admitted.

    3.     Defendant neither admits nor denies the allegations set forth in paragraph 3

of the Complaint and leaves the Plaintiff to its proofs.  To the extent that a further response

is required; denied.

    4.     Defendant neither admits nor denies the allegations set forth in paragraph 4

of the Complaint and leaves the Plaintiff to its proofs.  To the extent that a further response

is required; denied.

    5.     Defendant neither admits nor denies the allegations set forth in paragraph 5

of the Complaint and leaves the Plaintiff to its proofs.  To the extent that a further response

is required; denied.

1

6.      Denied.

7.      Paragraph 7 of the Complaint asserts legal conclusions that do not have to be admitted or denied.  In the alternative, to the extent that any facts are alleged, Defendant denies each and every allegation, averment, and claim for entitlement to relief and specifically denies that Plaintiff is entitled to any relief or recovery whatsoever in this action.

8.       Defendant refers the Plaintiff to Exhibit "A" attached to the Complaint, which speaks for itself. In the alternative, to the extent that any facts are alleged, Defendant denies each and every allegation, averment, and claim for entitlement to relief and specifically denies that Plaintiff is entitled to any relief or recovery whatsoever in this action.

9.      Defendant refers the Plaintiff to Exhibit "B" attached to the Complaint, which speaks for itself. In the alternative, to the extent that any facts are alleged, Defendant denies each and every allegation, averment, and claim for entitlement to relief and specifically denies that Plaintiff is entitled to any relief or recovery whatsoever in this action.

10.      Admitted.

11.      Admitted.

12.      Admitted.

13.      Defendant refers the Plaintiff to Exhibit "C" attached to the Complaint, which speaks for itself. In the alternative, to the extent that any facts are alleged, Defendant denies each and every allegation, averment, and claim for entitlement to relief and specifically denies that Plaintiff is entitled to any relief or recovery whatsoever in this action.

14.      Paragraph 14 of the Complaint asserts legal conclusions that do not have to be admitted or denied.  In the alternative, to the extent that any facts are alleged, Defendant denies each and every allegation, averment, and claim for entitlement to relief and specifically denies that Plaintiff is entitled to any relief or recovery whatsoever in this action.

15.      Defendant hereby incorporates its answers to Paragraphs 1 through 14 of the Complaint and incorporates the same as if fully set forth herein.

16.      Denied.

17.      Denied.

18.      Denied.

19.      Denied.

20.      Defendant refers the Plaintiff to Exhibit "C" attached to the Complaint, which speaks for itself. In the alternative, to the extent that any facts are alleged, Defendant denies each and every allegation, averment, and claim for entitlement to relief and specifically denies that Plaintiff is entitled to any relief or recovery whatsoever in this action.

21.      Denied.

22.      Defendant hereby incorporates its answers to Paragraphs 1 through 14 of the Complaint and incorporates the same as if fully set forth herein.

23.      Defendant admits to entering into an employment agreement with Plaintiff, in all other respects, denied.

24.      Defendant refers the Plaintiff to the findings of the District Court, which speak for themselves. In the alternative, to the extent that any facts are alleged, Defendant denies each and every allegation, averment, and claim for entitlement to relief and specifically denies that Plaintiff is entitled to any relief or recovery whatsoever in this action.

25.      Defendant refers the Plaintiff to Exhibit "A" attached to the Complaint, which speaks for itself. In the alternative, to the extent that any facts are alleged, Defendant denies each and every allegation, averment, and claim for entitlement to relief and specifically denies that Plaintiff is entitled to any relief or recovery whatsoever in this action.

26.      Denied.

27.      Denied.

28.      Defendant refers the Plaintiff to Exhibit "A" attached to the Complaint, which speaks for itself. In the alternative, to the extent that any facts are alleged, Defendant denies each and every allegation, averment, and claim for entitlement to relief and specifically denies that Plaintiff is entitled to any relief or recovery whatsoever in this action.

29.     Denied.

## **AFFIRMATIVE DEFENSES**

1.      As and for the First Affirmative Defense, the Complaint fails to state a cause of action under 11 U.S.C. § 523(a)(4) of the Bankruptcy Code, because nondischargeability of debts is limited to the grounds enumerated in 11 U.S.C. § 523 and the Plaintiff has not alleged facts supporting any of those grounds.

2.      As and for the Second Affirmative Defense, the Complaint fails to state a cause of action under 11 U.S.C. § 523(a)(6) of the Bankruptcy Code, because nondischargeability of debts is limited to the grounds enumerated in 11 U.S.C. § 523 and the Plaintiff has not alleged facts supporting any of those grounds.

3.      As and for the Third Affirmative Defense, the Complaint fails to meet all the elements of a claim under 11 U.S.C. §§ 523 *et seq.* of the Bankruptcy Code.

4.      As and for the Fourth Affirmative Defense, Defendant states that any statements, errors or omissions made by the Debtor as alleged in the Complaint are or were non-material and/or *de minimis*.

5.      As and for the Fifth Affirmative Defense, Defendant states that at all times relevant to the facts alleged in the Complaint, Defendant owed no fiduciary duty to Plaintiff.

6.      As and for the Sixth Affirmative Defense, Defendant states that at all times relevant, all representations made to Plaintiff by Debtor were mere statements of opinion, belief, or expectation.

7.      As and for the Seventh Affirmative Defense, Defendant states that no actionable representations of fact were made to the Plaintiff.

8.      As and for the Eighth Affirmative Defense, Defendant states that Plaintiff has failed to plead fraud and/or defalcation with the requisite particularity.

9.      As and for the Ninth Affirmative Defense, Defendant states that that an action for non-dischargeability of debt is barred by the statute of frauds.

10.     As and for the Tenth Affirmative defense, Defendant states that he had neither a subjective intent to harm, or a subjective belief that harm was substantially certain to be incurred by Plaintiff.

11.     As and for the Eleventh Affirmative defense, Defendant states that he had no intent to cause willful and/or malicious injury.

12.     As and for the Twelfth Affirmative defense, Defendant states res judicata applies to this matter.  A prior action MWK Recruiting, Inc. vs. Evan P. Jowers: Case No. 1:18-CV-444-RP was filed in the United States District Court for the Western District of Texas and resulted in a judgment on the merits.  The present action involves the same claims litigated in the prior action, the parties are the same and the Plaintiff is precluded from relitigating these claims.

13.     As for the Thirteenth Affirmative defense, Defendant states that the Plaintiff is collaterally estopped from relitigating issues in this action.  In a prior action MWK Recruiting, Inc. vs. Evan P. Jowers: Case No. 1:18-CV-444-RP in the United States District Court for the Western District of Texas   the issues of "fraud," "willfulness," and "maliciousness" were actually litigated and determined.  Those issues were necessary to the judgment that was entered.  The Plaintiff had a full and fair opportunity to litigate those issues in the prior action and is now precluded from relitigating those issues in this matter.

14.     Defendant presently has insufficient knowledge or information upon which to form a belief as to whether Defendant may have additional and yet unstated affirmative defenses available. Defendant reserves the right to assert additional affirmative defenses in the event that discovery indicates that such defenses are appropriate.

## DEMAND FOR JURY TRIAL

Defendant hereby waives the demand to trial by jury on any issues so triable.

## COUNTERCLAIM

Evan Phillip Jowers ("Counter-Plaintiff") sues Counsel Holding, Inc. ("Counter-Defendant") for damages as follows:

1.  Counter-Plaintiff through Plaintiff's attorneys, brings this lawsuit to challenge the actions of Counter-Defendant, who unlawfully and abusively attempted to collect a debt allegedly owed by Counter-Plaintiff. His conduct caused Counter-Plaintiff damages.

2.  Counter-Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Counter-Plaintiff, or to Counter-Plaintiff's counsel, which Counter-Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Counterclaim alleges violations of the statutes cited in their entirety.

4. Unless otherwise stated, Counter-Plaintiff alleges that any violations by Counter-Defendant were knowing and intentional, and that Counter-Defendant did not maintain procedures reasonably adapted to avoid any such violation.

5. Unless otherwise indicated, the use of any Counter-Defendant's name in this Counterclaim includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Counter-Defendant.

## JURISDICTION AND VENUE

6. Counter-Plaintiff is an individual who is a citizen of the State of Florida, and is the Debtor in the above-captioned bankruptcy case.

7. Counter-Defendant is a Texas corporation, a creditor of the Debtor which has filed a proof of claim in the instant bankruptcy case, and a "person" as contemplated by Section 559.72, Florida Statutes.

8. This is an action for violation of the Florida Consumer Collections Practices Act, therefore this Court has core jurisdiction pursuant to 28 U.S.C. §157(b)(2)(C).

9. Venue is proper pursuant to 28 U.S.C. § 1409 because this action is related to the Debtor's bankruptcy case pending in this District.

## ROBERT E. KINNEY

10. At all material times, Counter-Plaintiff and Robert E. Kinney have been recruiters who are involved in the legal recruitment industry. Legal recruiters place attorneys at law

firms in exchange for a fee. That fee is usually a percentage of the placed attorneys' annual salary that the placed attorney will receive at their new law firm.

11. Robert E. Kinney is the sole shareholder of Counsel Holding, Inc., MWK Recruiting Inc., and a principal of Kinney Recruiting. Counter-Plaintiff and Robert E. Kinney met in 2003.

12. In April 2006, Robert E. Kinney offered on a no strings attached basis—explicitly without a noncompete agreement—for Counter-Plaintiff to join his legal recruiting company called Kinney Recruiting. To induce Counter-Plaintiff to join him, Robert E. Kinney agreed to offer administrative support, a website and database, and to pay Counter-Plaintiff 65% of the placement fees resulting from Counter-Plaintiff's placement of attorneys at law firms.

13. Robert E. Kinney was responsible for overseeing Plaintiff's employment, including paying a distribution of commissions owed to Counter-Plaintiff, administrative support, obtaining proper authorization from government officials for employment, and payment of costs related marketing and advertising costs.

14. In December 2006, Robert E. Kinney demanded that Counter-Plaintiff sign a noncompete agreement or else he would withhold over $400,000 in pending commission to Counter-Plaintiff. Robert E. Kinney also threatened to defame Counter-Plaintiff to clients and shut him down in the attorney recruiting industry if Counter-Plaintiff did not sign the noncompete agreement. Under this financial duress, Counter-Plaintiff signed a non-compete agreement.

15. After the noncompete agreement was signed, Robert E. Kinney engaged in abusive behavior, which included but was not limited to:

8

a.  Never paying the agreed 65% commission;

b.  Making Counter-Plaintiff pay marketing and advertising costs;

c.  Structuring advances as predatory "pay day loans" with 18% interest;

d.  Forcing Counter-Plaintiff to sign loans bearing 18% interest to pay operating costs;

e.  Transferring Counter-Plaintiff to Hong Kong in June of 2015, immediately cancelling his work visa application, and refusing to sign a Hong Kong employment agreement so Counter-Plaintiff could legally work there;

f.  Attempting a taking of Counter-Plaintiff's wife's vehicle in a convoluted scheme, by trying to force Counter-Plaintiff's colleague's 18-year-old son to get licensed to repossess vehicles and take the car while the Counter-Plaintiff was out of the country;

g.  Urged associates of Counter-Plaintiff, like Alexis Lamb, to pursue romantic relationships with clients. Those efforts to convince associates to engage in such conduct were unsuccessful.

16. Robert E. Kinney further lowered Counter-Plaintiff's percentage of the placement fees from 65% to 25% while stating that he had Counter-Plaintiff in handcuffs and there was nothing Counter-Plaintiff could do about it.

17. In December 2016, Counter-Plaintiff left the employ of Robert E. Kinney to avoid arrest from the Hong Kong immigration authorities and get on with his life after eleven years of working with Robert E. Kinney and waiting eighteen months for Robert E. Kinney to fulfill his obligation and promise to sign off on the Hong Kong work visa.

**ROBERT E. KINNEY'S
CORPORATE ALTER EGOS**

18. Robert E. Kinney is engaged in a corporate shell game designed to allow him dissipate assets, avoid judgments, and limit his exposure to Counter-Plaintiff's attorneys fees related to his litigation and debt collection activities against Counter-Plaintiff.

19. Kinney Recruiting, on information and belief, is a Texas corporation and the former employer of Counter-Plaintiff.

20. MWK Recruiting Inc. on information and belief, is a Texas corporation that was set up by Robert E. Kinney with the sole purpose of suing Counter-Plaintiff and prevent Robert E. Kinney from being personally exposed to attorney-fee shifting statutes in litigation with Counter-Plaintiff.

21. Counsel Holding Inc., on information and belief, is a Texas corporation that was set up by Robert E. Kinney with the sole purpose of collecting the judgment that MWK Recruiting Inc. secured against Counter-Plaintiff and prevent Robert E. Kinney from being personally liable for debt collection activity.

22. Robert E. Kinney exerts complete control over Kinney Recruiting, Counsel Holding, Inc., MWK Recruiting Inc.,

23. Robert E. Kinney owns at least 80% of Kinney Recruiting, Counsel Holding, Inc., MWK Recruiting Inc.

24. Robert E. Kinney comingles his own money and other assets with the assets of Kinney Recruiting, Counsel Holding, Inc., MWK Recruiting Inc.

25. Robert E. Kinney has transferred the assets of the Kinney Recruiting, Counsel Holding, Inc., MWK Recruiting Inc. to himself and amongst Kinney Recruiting, Counsel Holding, Inc., MWK Recruiting Inc. without consideration. There is no arms length

transactions amongst Robert E. Kinney, Kinney Recruiting, Counsel Holding, Inc., MWK Recruiting Inc.

## COUNTER-DEFENDANTS' UNLAWFUL
## DEBT COLLECTION CONDUCT

26. On or about February 1, 2012, Counter-Plaintiff entered into a Forgivable Loan Agreement and Promissory Note (the "Forgivable Loan") with MWK Recruiting, Inc. **Exhibit "A"**.

27. On or about December 29, 2012, MWK Recruiting, Inc. and Counter-Plaintiff entered into a Revolving Loan (the "Revolving Loan") (the Forgivable Loan and Revolving Loan are hereinafter collectively referred to as the "Loans"). **Exhibit "B"**.

28. Counter-Plaintiff has disputed that he owes an alleged debt stemming from the Loans. But at least as of 2018, MWK Recruiting, Inc., contended that the Loans were in default, which was the subject of a bench trial.

29. On or about September 15, 2022, MWK Recruiting, Inc. obtained a judgment against Counter-Plaintiff stemming from the Loans.

30. After the Loans were purported to be in default, and in the alternative were otherwise in default, they were transferred to Counter-Defendant.

31. On or about September 22, 2022, at 4:28 p.m., Counter-Defendant, by and through Robert E. Kinney, sent the following communication to counsel for Counter-Plaintiff (the "First Email") to collect the judgment on the Loans:

> It's my understanding from various sources that Evan's flushing his cash already. **When I start seizing new Audi Q-series cars that he just gifted his mother, for example, it's going to get real for him, if not sooner.** I don't know why he thinks I will not do that.
>
> I need $200,000 if he wants any sort of stay.

Robert E. Kinney, Esq.
Attorney at Law
Mobile: +1-512-636-1395

**Exhibit "C"** (emphasis added).

32. On or about September 22, 2022, at 5:14 p.m. Counter-Defendant sent the following

communication (the "Second Email") to Counter-Plaintiff's attorney to collect the

judgment:

> Kevin, I realize I may be sounding too nice here. We just offered a reasonable
> settlement and Evan's response was to go buy a $90K car and brag about it on
> Facebook. I guess I should express my intentions more clearly. **Let Evan know**
> that this and a lot of the other stuff I know he is doing right now to flush cash
> qualifies as fraudulent transfers. I'm going to subpoena all his records, including
> his email and phone, which you won't be able to stop me from getting. **I will find**
> **out what all those transfers are, and as far as the car goes, I'm going to have**
> **the sheriff take that car away from his mom while she is watching with**
> **someone there to videotape the scene and then I'm going to put it on Youtube**
> **and send it to all to see that I did it. I'm coming after his wife's mink coat that**
> **he spent $20K on, his bank accounts, everything. I'm not going to get played**
> **by this joker any more. He needs to pay up. I will literally spend the rest of my**
> **life or his coming after his business.** When he runs to a foreign country, I'll get
> the court to let me force placement fees he might have any connection to into the
> registry of the court to be sorted out later. **I'll take his trademarks, I'll take his**
> **website, and I'll take his used dental floss.** Running from this problem is NOT
> going to work. **Please do your best to get this across.** Many thanks.
>
> Robert E. Kinney, Esq.
> Attorney at Law
> Mobile: +1-512-636-1395

**Exhibit "C"** (emphasis added).

33. On or about September 22, 2022, at 6:43 p.m., Counter-Defendant sent the following

communication (the "Third Email") to Counter-Plaintiff's attorney:

> Take my word for it this time - it's a nice, brown Q5 or Q7, I think. Mom looks
> very happy in the photo. I'm not sure if Evan realizes that having his mom
> participate in a fraudulent transfer to defraud a Texas creditor will subject her to
> specific personal jurisdiction in Texas, ending up in seizure of that car and whatever
> else he's giving her. Someone needs to convince him to stop the games.

Robert E. Kinney, Esq.
Attorney at Law
Mobile: +1-512-636-1395

**Exhibit "C"** (emphasis added).

34. Counter-Defendant's tortious communications described *supra* caused Counter-Plaintiff harm including, but not limited to: violations of his statutory rights, statutory damages, has subjected him to annoyance, stress, and disruption of his peace, has bizarrely invaded his family's privacy, has made him incredibly concerned for his family's privacy and wellbeing, has invaded his own privacy and caused him to be concerned for his own wellbeing, and caused a nuisance.

35. On November 14, 2023, Counter-Defendant caused a writ of garnishment to be issued by the Seventeenth Judicial Circuit of Florida in *Counsel Holdings, Inc. vs. Evan P. Jowers* in Case Number 23-013248 against Counter-Plaintiff's attorneys, Zermay Law, P.A. and Alexander P. Almazan, P.A. d/b/a Almazan Law to judgment stemming from the Loans. Despite these bankruptcy proceedings, Counter-Defendant and its attorneys have made no effort to dissolve the writs of garnishment or stay *Counsel Holdings, Inc. vs. Evan P. Jowers* in Case Number 23-013248.

36. Counter-Defendant claimed that Counter-Plaintiff owed a "debt" as that phrase is defined by Section 559.55(6), Florida Statutes.

37. Counter-Defendant's actions alleged in paragraphs 27 – 39 constitute four temporally separate and unlawful attempts to enforce an alleged debt.

<u>**COUNT I**</u>
**Violation of the Florida Consumer Collections Practices Act**

38. Counter-Plaintiff incorporates by reference and re-alleges paragraphs 27 through 37 as if fully set forth herein.

39. As to the First Email, Counter-Plaintiff brings this action against Counter-Defendant seeking statutory and actual damages, punitive damages, costs, and attorneys' fees for its violations of the FCCPA.

40. The Florida Legislature enacted laws, specifically the FCCPA, to protect the consuming public from unlawful debt collection practices.

41. The FCCPA states that in collecting consumer debts, no person shall: use profane, obscene, vulgar, or willfully abusive language in communicating with the debtor or any member of her or his family. §559.72(8), Fla. Stat. In the First Email, Counter-Defendant by and through Robert E. Kinney, accused Counter-Plaintiff of flushing cash, stated that he was going to seize Counter-Plaintiff's mother's automobile, and stated that it is going to get "real for him, if not sooner." That language is willfully abusive.

42.  It further states that no person shall claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist. In the First Email, Counter-Defendant, by and through Robert E. Kinney, stated that it would seize Counter-Plaintiff's mother's car while attempting to collect on the judgment stemming from the Loans. Counter-Defendant knew that it could not lawfully seize Counter-Plaintiff's mother's automobile while attempting to collect on the judgment.

43. For reasons stated *supra*, Counter-Defendant violated Sections 559.72(8) and (9), Florida Statutes.

44. As a result of the above-referenced violations of the FCCPA, Counter-Plaintiff has been subjected to unwarranted and illegal collection activities and, therefore, has been harmed.

45. As a result of the above-referenced violations of the FCCPA, Counter-Plaintiff has been subjected to unwarranted and illegal collection activities and, and has incurred harm,, including statutory damages, inconvenience, stress, disruption of peace, invasion of privacy, aggravation, nuisance, and annoyance.

46. Pursuant to section 559.77(2), Florida Statute, Counter-Plaintiff seeks an award of actual damages, punitive damages, and for additional statutory damages as the court may allow, but not less than $1,000, together with court costs and reasonable attorney's fees incurred by Counter-Plaintiff.

## <u>COUNT II</u>
### Violation of the Florida Consumer Collections Practices Act

47. Counter-Plaintiff incorporates by reference and re-alleges paragraphs 1 through 37 as if fully set forth herein.

48. As to the Second Email, Counter-Plaintiff brings this action against Counsel seeking statutory and actual damages, punitive damages, costs, and attorneys' fees for its violations of the FCCPA.

49. The FCCPA states that in collecting consumer debts, no person shall: tell a debtor who disputes a consumer debt that she or he or any person employing her or him will disclose to another, orally or in writing, directly or indirectly, information affecting the debtor's reputation for credit worthiness without also informing the debtor that the existence of the dispute will also be disclosed as required by subsection. § 559.72(5), Fla. Stat. Despite Counter-Plaintiff's dispute of the debt stemming from the Loans,

Counter-Defendant by and through Robert E. Kinney, threatened to cause the sheriff to take Counter-Plaintiff's mother's automobile from her while she watched, with someone there to videotape the scene and then I'm going to put it on Youtube and send it to all to see that Robert E. Kinney did it. Counter-Defendant did that despite failing to notify Counter-Plaintiff that he would also inform the recipients of the video that Counter-Plaintiff disputed the existence of the dispute regarding the debt.

50. The FCCPA states that in collecting consumer debts, no person shall: use profane, obscene, vulgar, or willfully abusive language in communicating with the debtor or any member of her or his family. § 559.72(8), Fla. Stat. Counter-Defendant by and through Robert E. Kinney, threatened to cause the sheriff to take Counter-Plaintiff's mother's automobile from her while she watched, with someone there to videotape the scene and then I'm going to put it on YouTube and send it to all to see that Robert E. Kinney did it. Further, Counter-Defendant, by and through Robert E. Kinney, wrote that Robert E. Kinney is "coming after his wife's mink coat that he spent $20K on, his bank accounts, everything . . . [Robert E. Kinney] will literally spend the rest of [his] life or his coming after his business.  When he runs to a foreign country, [Robert E. Kinney] get the court to let me force placement fees he might have any connection to into the registry of the court to be sorted out later.  [Robert E. Kinney will] take his trademarks, .  [Robert E. Kinney will]  take his website, and .  [Robert E. Kinney will]  take his used dental floss." That language is profane, willfully abusive, and made in collection of the judgment stemming from the Loans.

51. The FCCPA states that in collecting consumer debts, no person shall: claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or

16

assert the existence of some other legal right when such person knows that the right does not exist. § 559.72(9), Fla. Stat. Counter-Defendant by and through Robert E. Kinney, threatened to cause the sheriff to take Counter-Plaintiff's mother's automobile from her while she watched, with someone there to videotape the scene and then I'm going to put it on YouTube to humiliate Counter-Plaintiff (and his mother); take Counter-Plaintiff's wife's mink coat; and Counter-Plaintiff's bank accounts, his website, trademarks, and used dental floss; and spend the rest of Robert E. Kinney's life or Counter-Plaintiff's coming after Counter-Plaintiff's business. All of that despite Counter-Defendant knowing that it could not lawfully take such actions.

52. The FCCPA states that in collecting consumer debts, no person shall: publish or post, threaten to publish or post, or cause to be published or posted before the general public individual names or any list of names of debtors, commonly known as a deadbeat list, for the purpose of enforcing or attempting to enforce collection of consumer debts. § 559.72(14), Fla. Stat. Counter-Defendant by and through Robert E. Kinney threatened to cause the sheriff to take Counter-Plaintiff's mother's automobile from her while she watched, with someone there to videotape the scene and then I'm going to put it on YouTube to humiliate Counter-Plaintiff (and his mother). YouTube is a publicly accessible website, and the posting of such a video described by Robert E. Kinney violates § 559.72(14), Fla. Stat.

53. For reasons stated *supra*, Counter-Defendant violated sections 559.72(5), (8), (9), and (14), Florida Statutes.

54. As a result of the above-referenced violations of the FCCPA, Counter-Plaintiff has been subjected to unwarranted and illegal collection activities and, therefore, has been harmed.

55. As a result of the above-referenced violations of the FCCPA, Counter-Plaintiff has been subjected to unwarranted and illegal collection activities and, and has incurred harm,, including statutory damages, inconvenience, stress, disruption of peace, invasion of privacy, aggravation, nuisance, and annoyance.

56. Pursuant to section 559.77(2), Florida Statute, Counter-Plaintiff seeks an award of actual damage, punitive damages, and for additional statutory damages as the court may allow, but not less than $1,000, together with court costs and reasonable attorney's fees incurred by Counter-Plaintiff.

### <u>COUNT III</u>
### Violation of the Florida Consumer Collections Practices Act

57. Counter-Plaintiff incorporates by reference and re-alleges paragraphs 1 through 35 as if fully set forth herein.

58. As to the Third Email, Counter-Plaintiff brings this action against Counter-Defendant seeking statutory actual damages, and punitive damages, costs, and attorneys' fees for its violations of the FCCPA.

59. The FCCPA states that in collecting consumer debts, no person shall: (i) willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family. § 559.72(7), Fla. Stat.  Because this is the third email from Counter-Defendant, by and through Robert E. Kinney, to Counter-Plaintiff

in a one day period of time to coerce Counter-Plaintiff to pay the judgment stemming from the Loans, the frequency of such emails are reasonably expected to harass Counter-Plaintiff and his family.

60. The FCCPA states that in collecting consumer debts, no person shall: use profane, obscene, vulgar, or willfully abusive language in communicating with the debtor or any member of her or his family. . § 559.72(8), Fla. Stat.  Counter-Defendant, by and through Robert E. Kinney, used willfully abusive language in communicating with Counter-Plaintiff in collecting the judgment stemming from the Loans when it wrote that Counter-Plaintiff's mother's car is a "brown Q5 or Q7, I think.  Mom looks very happy in the photo.  I'm not sure if [Counter-Plaintiff] realizes that having his mom participate in a fraudulent transfer to defraud a Texas creditor will subject her to specific personal jurisdiction in Texas ending up in seizure of that car and whatever else he's giving her."

61. The FCCPA states that in collecting consumer debts, no person shall: claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist. . § 559.72(9), Fla. Stat. Counter-Defendant, by and through Robert E. Kinney, knows that it cannot seize Counter-Plaintiff's mother's automobile in collecting the judgment stemming from the Loans.

62. For reasons stated *supra*, Counter-Defendant violated sections 559.72(7), (8), and (9), Florida Statutes.

46.    Pursuant to section 559.77(2), Florida Statute, Counter-Plaintiff seeks an award of actual damages, punitive damages, and for additional statutory damages as the

court may allow, but not less than $1,000, together with court costs and reasonable attorney's fees incurred by Counter-Plaintiff.

## **DEMAND FOR JURY TRIAL**

Counter-Plaintiff waives its demand fortrial by jury on any issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

a.     That a final judgment be entered against Counter-Defendant for Counter-Plaintiff's actual damages, for punitive damages, and for additional statutory damages as the court may allow, but not less than $3,000, together with court costs and reasonable attorney's fees incurred by Plaintiff, pursuant to section 559.77(2), Florida Statutes;

b.     That a final judgment be entered against Counter-Defendant permanently enjoining it from further violations of the Florida Consumer Collections Practices Act, Chapter 559, Part VI, Florida Statutes; pursuant to section 559.77(2), Florida Statutes;

c.     That a final judgment be entered against Counter-Defendant which awards Counter-Plaintiff his attorneys' fees and costs pursuant to section 559.77(2), Florida Statutes;

d.     That a final judgment be entered denying all of Plaintiff and Counter-Defendant all of the relief requested in its Complaint.

e.     Defendant and Counter-Plaintiff further request all other further relief this Court deem just and proper

DATED:  February 27, 2025

**PARAGON LAW, LLC**

*/s/Kristopher Aungst*
Kristopher Aungst, Esq.
Counsel for the Debtor/Defendant
Paragon Law, LLC
2665  S. Bayshore Dr.,
Suite 220-10
Miami, FL 33133
Phone: 305-812-5443
Email: ka@paragonlaw.miami
Florida Bar No. 55348

**ZERMAY LAW, P.A.**

*/s/Zachary Z. Zermay*
Zachary Z. Zermay, Esq.
Special Counsel to the Debtor
3000 Coral Way, Suite 1115
Email: zach@zermaylaw.com
Telephone: (305) 767-3529
Email: zach@zermaylaw.com
Florida Bar No. 1002905

21
**CERTIFICATE  OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing pleading was served this the 27th day of February 2025, via CM/ECF.

Respectfully submitted,

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court of the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-l(A).

/s/ Kristopher Aungst, Esq.
Kristopher Aungst, Esq.
Paragon Law, LLC
Attorney for Debtor
2665 S. Bayshore Dr.
Suite 220-10
Miami, FL 33133
305-812-5443
ka@paragonlaw.miami
Florida Bar No. 55348