## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA,
## WEST PALM BEACH DIVISION

| | |
|---|---|
| In re:<br><br>EVAN PHILLIP JOWERS,<br><br>      Debtor. | Case No: 24-13584-MAM<br><br>Chapter 11 |
| COUNSEL HOLDINGS, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>EVAN PHILLIP JOWERS,<br><br>      Defendant. | Adv. Case No.: 24-01338-MAM |

### COUNTER-DEFENDANT COUNSEL HOLDINGS, INC.'S MOTION
### TO DISMISS AMENDED COUNTERCLAIM OR FOR ABSTENTION

Plaintiff and Counter-Defendant, Counsel Holdings, Inc. ("CHI" or "Counsel Holdings"), by and through undersigned counsel, hereby moves this Court to DISMISS the *Amended Counterclaim* filed by Defendant/Counter-Plaintiff Evan Phillip Jowers ("Jowers") with prejudice, or in the alternative, for abstention under 28 U.S.C. § 1334(c)(1). In support, CHI states as follows:

## I.   Factual and Procedural Background

**A. Overview of CHI's Judgment Against Jowers.**

1.        CHI is the successor by merger to MWK Recruiting, Inc. ("MWK"), which employed Jowers as a legal recruiter.

2.        MWK sued Jowers in the United States District Court for the Western District of Texas (Case No. 1:18-CV-444-RP) for misappropriation of trade secrets, breach of restrictive covenants in his employment agreement, and default on two business-related loans.

3.      On September 19, 2022, the Texas court entered a *Final Judgment* against Jowers and in favor of CHI for $3,640,132.60 plus daily interest of $361.02.

4.      A July 25, 2023, *Amended Final Judgment* detailed the awards as follows:

• $515,326.20 for misappropriation of trade secrets,

• $3,028,841.72 for breach of the employment agreement,

• $26,204.90 for breach of the first loan,

• $15,759.78 for breach of the second loan,

• Plus $155,455.30 and $671,294.33 in prejudgment interest, respectively.

5.      On January 29, 2024, the District Court awarded CHI an additional $1,905,335.00 in attorneys' fees and $19,515.32 in costs and appointed a receiver.

6.      Jowers appealed, but the Fifth Circuit affirmed the *Final Judgment* on April 1, 2024.

**B.  Alachua County Action and Channeling Injunction.**

7.      Immediately after entry of the September 19, 2022, *Final Judgment*, Jowers filed an action under the Florida Consumer Collection Practices Act (Fla. Stat. 559.55 et seq. (the "FCCPA"). Jowers filed the action in the Eighth Judicial Circuit in Alachua County, Florida, a forum where CHI had no contacts.

8.      On July 10, 2023, the Alachua County Circuit Court dismissed Jowers' action for lack of personal jurisdiction and found that the alleged conduct fell under Florida's absolute litigation privilege. Nevertheless, the court granted Jowers limited leave to amend but also enjoined him from bringing the same or similar claims in any forum other than Alachua County ("channeling injunction"). A copy of this *Order* is attached as **Exhibit "A".**

9.      Facing possible sanctions if he refiled in that same court, Jowers filed a motion to reduce his alleged damages below $8,000 so he could move the case to small claims court. (A copy

of the amended motion is attached as **Exhibit "B."**) Jowers thereby admitted the amount in controversy is below $8,000, refuting any argument for federal diversity jurisdiction.

**C.  This Adversary Proceeding and the Amended Counterclaim.**

10.     In light of the Texas court's findings regarding Jowers' misconduct, CHI filed the above-captioned adversary proceeding under 11 U.S.C. §§ 523(a)(4) and (a)(6).

11.     Nearly identical to his Alachua County complaint, Jowers responded with a Counterclaim under the FCCPA, which this Court dismissed [Doc. 33], noting on the record that the alleged debt was not "consumer" in nature and that Florida's litigation privilege likely applied.

12.     Jowers then filed the instant *Amended Counterclaim* [Doc. 39] on February 27, 2025, again asserting FCCPA violations based on the same email communications.

## II.  Summary of the Arguments

**A.  This Court Lacks Adjudicatory Authority (*Stern v. Marshall*).**

Debtor's counterclaims under the FCCPA fall squarely within the holding of *Stern v. Marshall* because: (1) the counterclaims are entirely based upon state law; (2) the adjudication of the counterclaims is entirely independent of federal bankruptcy law; and (3) the counterclaims are not resolvable by a ruling on Creditor's proof of claim. *Stern v. Marshall*, 131 S. Ct. 2594, 2603-04 (2011). As such, it would be a violation of Article III of the Constitution if the Court were to issue a final judgment on the Debtor's counterclaims.[1]

**B.  Debtor fails to State a Claim under the FCCPA.**

**Non-Consumer Debt**: Jowers's obligations arise from breach of restrictive covenants, trade-secret misappropriation, and business-related loans. Under Florida law, consumer debt must

---

[1] Counsel Holdings states, as required by Rule 7012, that it does not consent to entry of a final order or judgment by the Bankruptcy Court with respect to the counterclaim.

be incurred "primarily for personal, family, or household purposes." Fla. Stat. § 559.55(6). The debts at issue do not satisfy this threshold question.

**Absolute Litigation Privilege**: The Florida court already held that settlement-related communications or post-judgment enforcement demands are privileged. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007); *Levin v. U.S. Fire Ins. Co*., 639 So. 2d 606, 608 (Fla. 1994). Additional Florida case law underscores the privilege's breadth, even outside the courtroom. *See, e.g., Acosta v. Gustino*, No. 6:11-cv-1266, 2014 U.S. Dist. LEXIS 61356 * | 2014 WL 1764713 at *7-8 (M.D. Fla. May 2, 2014); *Kinsey v. MLH Fin. Servs., Inc*., 509 F. App'x 852 (11th Cir. 2013).

**No Unlawful Threat**: The alleged emails threaten lawful post-judgment remedies (e.g., seizing fraudulently transferred assets). Merely announcing one's intent to pursue such remedies does not violate the FCCPA. Cf. *Shimek v. Forbes*, 252 F.3d 1357, 1361 (11th Cir. 2001). Jowers does not plead facts showing actual knowledge on CHI's part that the debt was invalid or that enforcement rights did not exist.

## C. The Court should permissively abstain under 28 U.S.C. § 1334(c)(1).

For several reasons, the Court should exercise its authority under 28 U.S.C. 1334(c)(1) to abstain from hearing the counterclaims. The Court lacks adjudicatory authority, making the effort to go through them pointless. Further, the Alachua County Circuit Court already ruled on these claims, found them privileged, and enjoined Jowers from refiling them elsewhere. Taking them up in this Court now would be the opposite of comity. This is especially true since Jowers admitted the amount in controversy is under $8,000, defeating federal diversity jurisdiction.

## III.  Legal Argument

## A. Lack of Adjudicatory Authority

Debtor's *Amended Counterclaim* contains three counts, each asserted under the FCCPA, all of which are practically identical to those in the initial counterclaim. Each count alleges violations of §559.72 related to what is referred to as the "First Email" (Count I), the "Second Email" (Count II) and the "Third Email" (Count III). In response to the Court's finding that the initial counterclaim was a "shotgun pleading," all Jowers did was parse out allegations regarding who did what. Breaking down the pleading in this way does not change the fact that the debts at issue are non-consumer debts and as such do not fall within the purview of the FCCPA. Nothing since entry of the order dismissing the initial counterclaim changes the nature of the debt. Moreover, as found the Florida court, the statements at issue made in furtherance of collecting the debt are protected by the absolute litigation privilege.

But this Court need not reach those issues. The Supreme Court's decision in *Stern v. Marshall*[2] dictates that a bankruptcy court may not constitutionally exercise adjudicatory authority over a state law counterclaim, such as the one asserted by Debtor in this case, if the counterclaim would not be resolved in the process of ruling on a creditor's proof of claim.[3] Florida bankruptcy judges have "routinely held that FCCPA actions…are only 'related to' a case under title 11."[4] Here, these non-core FCCPA counterclaims fall squarely within the holding of *Stern*.

Debtor's renewed three count counterclaim is grounded in the FCCPA. Therefore, federal question jurisdiction is not present. Further, there is no basis for federal diversity jurisdiction over these claims. Although there is diversity of citizenship between Jowers and CHI, the amount in controversy does not exceed $75,000. Jowers represented the value was $8,000 to the Florida state court when seeking the transfer to the small claims division. *See*, **Exhibit "B"** ¶¶ 4-5 at 2-3.

---

[2] 564 U.S. 462 (2011).
[3] *Id*. at 503.
[4] *In re Richard Carlton Peacock II*, 455 B.R. 810 (Bankr. M.D. Fla. 2011).

**B.  Failure to State Claims for which Relief Can be Granted**

If this Court concludes that it has jurisdiction to adjudicate Debtor's counterclaims and wishes to do so despite ample reasons for abstention, then the Court must find that the Debtor once again fails to state claims for which relief can be granted. As a result, Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable herein pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure (2025), calls for the dismissal of the counterclaim in its entirety.

Jowers, in amending the counterclaim, set forth in paragraphs 10 through 24 several factual allegations that have no relevance whatsoever to claims for violating the FCCPA, including allegations regarding CHI being the purported alter ego of Robert Kinney. The factual allegations that do arguably serve as the basis for FCCPA claims are found in paragraphs 26 through 35, which refer to the attempts to collect debts the Texas district court already found are non-consumer debts. And efforts employed in collecting the debt do not violate the proscriptions contained in the FCCPA. Moreover, the statements the Debtor alleges were in violation of the FCCPA – statements made by Mr. Kinney to one of the Debtor's attorneys during settlement negotiations – are also absolutely privileged under Florida's litigation privilege, as previously found by the Florida state court when it dismissed Debtor's claims.

**1.        The claims fail because the debts are not consumer debts.**

The debts Mr. Kinney was referring to in his emails to Mr. Cole on September 22, 2022, are not consumer debts within the meaning of the prohibitions of section 559.72. This is a threshold requirement for each alleged violation under section 559.72. Thus, to establish a violation of Section 559.72, Debtor must first plead and prove that the $3.6 million he owes to MWK under the Texas judgment (which was the subject of the allegedly tortious email messages from Mr. Kinney to Mr. Cole) is "consumer debt" within the meaning of Section 559.55(6) of the FCCPA, which is defined as a "transaction in which the money, property, insurance, or services which are

the subject of the transaction" was "<u>primarily</u> for personal, family, or household purposes…". Fla. Stat. 559.55(5) (emphasis added).

Of the $3,640,132.60 owed (not including interest), $515,326.20 is for misappropriation of trade secrets, $3,082,841.72 is for breach by Debtor of his employment agreement's restrictive covenants, $26,204.90 is for failure to repay a forgivable loan that Debtor received as compensation for services, and $15,759.78 is for failure to repay a revolving line of credit Debtor used to pay for what he has described as business expenses. The only component of the Texas judgment debt that even arguably could have been for "personal, family, or household purposes" is the portion related to the revolving line of credit, *a mere 0.4% of the total*. This is not enough to make the debts "primarily" consumer debts, a threshold requirement for liability under the FCCPA.

**2.      The facts as alleged fail to state claims under §559.72(8), (9), and (14).**

All three counts allege violations of §559.72(8) and (9), with each count directed to each of the three communications contained in paragraphs 31-33 of the *Amended Counterclaim*. Count II, as it did in the initial counterclaim, also alleges violations of paragraph (14) of §559.72. Similarly, Count III once again refers to paragraph (7) of the statute.

Under these provisions, a person shall not do the following in connection with collection of a "consumer" debt:

> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

> (8) Use profane, obscene, vulgar, or willfully abusive language in communicating with the debtor or any member of her or his family.

> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

> …

(14) Publish or post, threaten to publish or post, or cause to be published or posted before the general public individual names or any list of names of debtors, commonly known as a deadbeat list, for the purpose of enforcing or attempting to enforce collection of consumer debts.

Fla. Stat. §559.72(7)-(9), and (14).

> ### a.  Statements were not made to Debtor or his family and were not abusive or profane.

According to the *Amended Counterclaim*, Mr. Kinney and MWK violated the FCCPA when Mr. Kinney, acting as attorney for CHI, told Debtor's counsel, Mr. Cole, that MWK would use every means at its disposal to execute on the Texas judgment against Debtor, as well as against parties to whom Debtor fraudulently transfers his assets. The statements were made to Debtor's attorney, not to the Debtor or any member of his family, as required by paragraph (7) and (8) and of §559.72. Moreover, the statements made by Mr. Kinney or MWK were, as a matter of law, not profane, obscene, vulgar, or willfully abusive, and therefore did not violate paragraph (8). Under *Jeter v. Credit Bureau, Inc*., the language used in the instant case does not come close to the level of offensiveness that "might encompass name-calling, racial or ethnic slurs, [or] other derogatory remarks which are similar in their offensiveness to obscene or profane remarks." 760 F.2d 1168, 1178 (11th Cir. 1985); *see also Meininger v. Green Tree Servicing, LLC*, No. 8:11-CV-2006-T-33, 2012 WL 1166161, at *4 (M.D. Fla. Apr. 6, 2012) ("In accordance with *Jeter* and its progeny, the Court finds that the terms 'loser' and 'deadbeat' may be considered rude and unpleasant, but do not rise to the level of willfully abusive language similar in offensiveness to obscene and profane remarks required by the FDCPA and FCCPA.").

> ### b.  The debt was (and is) valid and threatened means of enforcement do in fact exist.

Turning to paragraph (9), Debtor fails to allege that the debt is invalid, and that the debt collector had actual knowledge that the debt was invalid, as required. *LeBlanc v. Unifund CCR*

*Partners*, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010) ("Section 559.72(9) of the FCCPA requires a plaintiff to demonstrate that the debt collector defendant possessed *actual knowledge* that the threatened means of enforcing the debt was unavailable."). Indeed, the statements made by Mr. Kinney reflected his sound belief the debts were valid, since the judgment was ultimately affirmed on appeal. Further, the avenues for enforcement he believed existed do in fact exist. Specifically, Mr. Kinney was communicating to Mr. Jowers's counsel that MWK will pursue fraudulent transferees, even against Mr. Jowers's mother, to the extent of seizing assets from them if necessary. The threat of seizure of a vehicle from a judgment debtor or his fraudulent transferee by a law enforcement officer, is unremarkable from a legal standpoint – such seizures occur regularly. Regardless of whether Mr. Jowers and his counsel believe that MWK can obtain judgment against fraudulent transferees of Mr. Jowers's assets and execute on those assets, MWK and Mr. Kinney believe (and always believed) that the threatened means of enforcement are available, and the *Counterclaim* does not assert otherwise. Thus, the *Counterclaim* fails to state claims under §559.72(9).

### c.   Nothing was published or posted to the "general public" as required.

Regarding the statutory language found in paragraph (14) of §559.72, prohibiting the publishing or posting or causing the publishing or posting of certain information, the statute requires that it published or posted to the "general public." In this case, the statements on which Debtor bases all his counterclaims were made to Debtor's attorney, not to the general public and therefore are not actionable. *Williams v. Salt Springs Resort Ass'n*, 298 So. 3d 1255 (Fla. 5th DCA 2020). In *Salt Springs*, the Court held there could be liability under paragraph (14) when a condominium association posted a list of all unit owners who owed the association for past due assessments, a list that was made available to over 100 unit owners. *Id.* at 1258. No publication of

this magnitude is alleged by Debtor to have occurred in this case. As such, Count III fails to state a cause of action under §559.72(14) and should be dismissed.

> **3.     The statements made by Mr. Kinney are all entitled to "absolute immunity" under Florida's litigation privilege.**

All the alleged tortious statements of Mr. Kinney to Mr. Cole are entitled to the absolute immunity conferred by Florida's litigation privilege. Florida law provides complete judicial immunity "to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Echevarria,* 950 So. 2d at 384. The Florida Supreme Court has made clear that the privilege extends to statutory causes of action: "The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." *Id.* As found by the Florida state court, from the face of the counterclaim, it is clear that Mr. Kinney was communicating with Mr. Cole, an attorney for Debtor, related to settlement of ongoing litigation. *Amended Counterclaim,* ¶¶31-33. This is enough to bar Debtor's claims.

Florida's expansive litigation privilege extends not only to filings made to a court itself, but to any "defamatory statement or other tortious behavior ... so long as the act has some relation to the proceeding." *Levin*, 639 So.2d at 608 (emphasis added). "The sending of a letter from one attorney to opposing counsel, informing the latter that the former was taking over an existing case and discussing various issues such as amendments of pleadings and scheduling of mediation, is a quintessential example of 'an act that occurs during the course of a judicial proceeding [and] has some relation to the proceeding." *Acosta v. Gustino*, Case No: 6:11-cv-1266-Orl-31GJK, at *7-8 (M.D. Fla. May 2, 2014) (citing *Kinsey v. MLH Fin. Services, Inc.,* 509 Fed. Appx. 852, 853-54 (11th Cir. 2013) (FDCPA case). "Florida law suggests that the Florida courts would agree that 'events taking place outside the courtroom during discovery or settlement discussions are no less

an integral part of the judicial process and thus deserving of the protection of the [litigation] privilege, than in-court proceedings." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004). For the foregoing reasons, the counterclaims should be dismissed.

## C. Permissive Abstention

Under 28 U.S.C. § 1334(c), a bankruptcy court has the discretion to abstain from hearing certain proceedings. The abstention doctrine distinguishes between mandatory abstention under §1334(c)(2) and permissive abstention under §1334(c)(1). Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

This is precisely the sort of case where, in the interest of justice and comity with state courts, the Court should abstain. Courts considering relief under this section consider similar factors. These include: (1) the effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than §1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, (12) the presence in the proceeding of non-debtor parties, (13) comity, and (14) the possibility of prejudice to other parties in the action. *E.S. Bankest,*

*Adv. Case No.: 24-01338-MAM*

*LLC v. United Beverage Florida, LLC* (*In re United Container LLC*), 284 B.R. 162 (Bankr. S.D. Fla. 2002) (citing authority).

Factors 2, 4, 5-8, 10, and 13 clearly weigh in favor of abstention. The claims are based purely on state law and there was a prior proceeding in the Florida state courts in which the Florida court entered a channeling injunction requiring Debtor to bring any future claims in Alachua County that are based on the same operative facts that served as the basis for the earlier action, which is exactly what Debtor is doing by asserting the counterclaims in this adversary proceeding. As to factor number 5, there is no independent jurisdictional basis other than related to jurisdiction under 28 U.S.C. §1334(b). The claims are remotely related to the main bankruptcy case and are clearly not "core" in substance. As for forum shopping, although Debtor has the right to seek bankruptcy relief, he did so only after losing in the Texas District Court and the subsequent appeal and after dragging CHI to a distant, improper forum by bringing the action in Florida's Eighth Judicial Circuit. The Debtor is thus continuing to forum shop by seeking relief from this Court, including in this adversary proceeding. Finally, factor number 13 – comity – calls for this Court to abstain and respect the channeling injunction established by the Florida court.

WHEREFORE, CHI, by and through undersigned counsel, requests that this Court grant this *Motion* and grant CHI any further relief this Honorable Court deems just and proper.

Dated this 12th day of March 2025.

LORIUM LAW
*Attorneys for Plaintiff/Counter-defendant*
101 N.E. Third Avenue, Suite 1800
Fort Lauderdale, Florida 33301
Telephone:    (954) 462-8000
Facsimile:    (954) 462-4300

By:  */s/ Jason E. Slatkin*
       Jason E. Slatkin
       Florida Bar No. 040370
       jslatkin@loriumlaw.com

*Adv. Case No.: 24-01338-MAM*

**<u>Certificate of Service</u>**

I CERTIFY that a true copy of the foregoing has been served via email through the Court's CM/ECF system to Kris Aungst, Esq., ka@paragonlaw.miami and via email on Zachary Z. Zermay, Esq., zach@zermaylaw.com on this 12th day of March 2025.

<u>*/s/ Jason E. Slatkin*</u>
Jason E. Slatkin

7631.001