UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

In re
EVAN PHILLIP JOWERS,                          Chapter 11
      Debtor.                                  Case No. 24-13584-MAM
_____/
COUNSEL HOLDINGS, INC.,
      Plaintiff,
v.                                            Adv. Pro. No.: 24-01338-MAM

EVAN PHILLIP JOWERS,
      Defendant.
_____/

### **EVAN JOWERS' OPPOSITION TO COUNSEL'S MOTION TO DISMISS (ECF 43)**

Evan Jowers respectfully submits this opposition to the motion to dismiss. He states:

**A. The motion to dismiss standard.**

Rule 7012 of the Federal Rules of Bankruptcy Procedure (2025) incorporates Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) which allows for dismissal of a case when the complaint "fail[s] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1321-22 (11th Cir. 2012). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**B. Mr. Jowers' counterclaims arose from the same common nucleus of fact as Counsel's complaint, are compulsory, and there is supplemental jurisdiction.**

If a federal court has original subject matter jurisdiction over at least one claim, the court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a*)." Rosa v. Aids Healthcare Found., Inc.,* No. 10-60595-Civ-COHN/Seltzer,

1

2010 U.S. Dist. LEXIS 75147, at *2-3 (S.D. Fla. July 27, 2010). "A claim is part of the same case or controversy, if '[t]he state and federal claims derive from a common nucleus of operative fact.' *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Moreover, if a counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[,]" then the claim is compulsory and must be brought as a counterclaim. Fed. R. Civ. P. 13(a). According to the Eleventh Circuit, "[a] claim arises out of the same transaction or occurrence if there is a 'logical relationship' between the claims." *Constr. Aggregates, Ltd. v. Forest Commodities Corp.,* 147 F.3d 1334, 1337 n.6 (11th Cir. 1998) (quoting *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.,* 755 F.2d 1453, 1455 (11th Cir. 1985)). This requirement is met where a federal claim and a state claim involve the same facts, occurrences, witnesses, and evidence, even where the elements of the state and federal claims differ. *Palmer v. Hospital Auth.,* 22 F.3d 1559, 1566 (11th Cir.1994)." *Rosa v. Aids Healthcare Found., Inc*., No. 10-60595-Civ-COHN/Seltzer, 2010 U.S. Dist. LEXIS 75147, at *4 (S.D. Fla. July 27, 2010). Because the FCCPA involves the same facts, occurrences, witnesses, and evidence regarding the alleged debts that Counsel Holdings, Inc. ("Counsel") is trying to enforce, Mr. Jowers' claims are compulsory counterclaims and there is supplemental jurisdiction.

C.  **Mr. Jowers'** *ad damnum* **in the voluntarily dismissed state action has no import.**
    Plaintiffs are the masters of their complaints. *See, e.g., Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1050 (C.D. Cal. 2012). For example, it is within a plaintiff's prerogative to dismiss this action and refile separately to avoid the exercise of this Court's jurisdiction if they so choose, or to amend their complaint and file a stipulation affirming that they are seeking $75,000 or less. *Id.* It does not matter that Mr. Jowers only sought a small claims sum (and no punitive or injunctions) against Counsel in the state action. And federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 376 (2012). Here Mr. Jowers "has successfully established that the parties are completely diverse and the amount in controversy exceeds $75,000," and the Court cannot "deprive the parties of a federal forum." *Brumfield*, No. 2:23-CV-0341-TOR, 2024 U.S. Dist. LEXIS 26129, at *15 (E.D. Wash. Feb. 14, 2024). There is diversity jurisdiction between the parties, and even if the claims are not "compulsory" there is jurisdiction.

**D.  The litigation privilege does not apply.**

"When interpreting state law, a federal court is bound by the rulings of the state's highest court. If the state's highest court has not ruled on the issue, a federal court must look to the intermediate state appellate courts." *In re Kauffman*, 299 B.R. 641, 647 (Bankr. M.D. Fla. 2003) (cleaned up) citing *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996). Florida's Eighth Judicial Circuit, as a trial court, is not Florida's highest court or an intermediate state appellate court. This Court is not bound by the trial judge's decision, and it reviews the issue regarding the litigation privilege *de novo*. But the Court is required to follow binding authority. Florida's Third District Court of Appeal—which is an intermediate appellate court of the Great State of Florida—wrote a well-reasoned opinion in *Moise v. Ola Condo. Ass'n, Inc.*, demonstrating that the litigation privilege does not apply to Counsel's communications. 314 So. 3d 708, 710 (Fla. 3d DCA. 2021).

In *Moise*, a condominium association (the "Association") assigned a condo lien against a debtor ("Moise") to a third party ("LAS"). *Id.* The Association, though its attorney ("Essig"), filed a foreclosure action against Moise and LAS (under a theory that the lien was inferior to the LAS's claim). Relevant here, Moise bought crossclaims against Essig under the FCCPA section 559.72(9), Florida Statutes.[1] Moise alleged that:

> [D]espite assigning its rights to LAS, the Association retained Essig to collect allegedly delinquent assessments against Moise, and in July and August 2018, the Association, "via its agents" Essig,

---

[1] "In collecting consumer debts, no person shall: Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the rbvight does not exist."

3

      sent collection letters to Moise, threatening to file a lien against her condominium unit if the debt was not paid and to also file a foreclosure action. The counterclaim alleges that, prior to filing the September 2018 claim of lien and instituting the underlying lawsuit, Essig was aware of the Agreement because in May 2018, the Association, through its agents Essig, filed a separate lawsuit against LAS for breach of the Agreement, specific performance, and equitable accounting.

*Id.* at 709.

The trial court dismissed Moise's crossclaims against Essig under the litigation privilege. *Id.* The Third District reversed because, Essig "had knowledge that the Association and LAS had entered into the Agreement, wherein the Association assigned to LAS the Association's right, title, and interest in the delinquent condominium assessments, and the right for LAS to file suit in its name to collect the delinquent assessments. As such, Essig, as the Association's agent, had no basis to proceed with the collection efforts, the filing of the claim of lien, or the underlying lawsuit. *Id.* at 710. Here in this case, Counsel (and Mr. Kinney) similarly knew that it could not take the unlawful actions that he brazenly threatened to take against Mr. Jowers, his family, and his business. ECF 39 at ¶¶ 4; 42; 51; 61. Moreover, the Middle District of Florida, and Florida Supreme Court demonstrate that the litigation privilege does not protect the outrageous conduct at issue in this case. *Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017) (litigation privilege does not apply when it would "eviscerate" a cause of action.); *N. Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1329-1332 (M.D. Fla. 2009) (applying the litigation privilege to bar a FCCPA based on abusive settlement communications would "eviscerate" the act.).

      In *Debrincat*, the Florida Supreme Court held that the litigation privilege does not apply where apply its application would "eviscerate" a cause of action. The U.S. District Court for the Middle District of Florida has held that the litigation privilege does not apply to communications with an attenuated connection than those found "in typical settlement negotiations" and noted that statements "may distinguish it from a direct attachment to the litigation"[2] because application of

---

[2] Holding out the statements "[i]f we agree on an amount, you will not have to go to court" and "[t]his is your last opportunity to resolve this matter without going to court." As examples of the statements that took the communications

4

"the litigation privilege to the communications here would eviscerate the FCCPA and allow attorney debt collectors to avoid liability under state law for potentially abusive and harassing collection practices simply by filing a lawsuit before attempting to collect a debt." *Krig*, 611 F. Supp. 2d at 1329-1332. If the Court were to apply the litigation privilege here, *i.e.*, an abusive creditor and its attorney threatening a debtor, his mother, his wife, his business, and vowing to chase him to the ends of the Earth until either Mr. Jowers or Mr. Kinney dies merely because it had a judgment, it would eviscerate the FCCPA by creating a "litigation" exception that swallows the rule.

Furthermore, "[i]n the absence of precedents from Florida's intermediate appellate courts, however, we may consider the case law of other jurisdictions that have examined similar policy provisions." *State Farm Fire & Casualty Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004). The Court's "objective is to determine issues of state law as we believe the Florida Supreme Court would, therefore a federal court attempting to forecast state law must consider whatever might lend it insight, including "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 (11th Cir. 2005); *citing McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir. 1980). Under California's analogous Rosenthal Fair Debt Collection Practices Act, it has been repeatedly held that litigation privilege does not apply to the act because it would render its protections "meaningless." *Moten v. Transworld Sys. Inc.*, 98 Cal. App. 5th 691, 705, 317 Cal. Rptr. 3d 13, 24 (2023). The same is true for the federal Fair Debt Collection Practices Act. *Hall v. MLG, P.A.*, 981 F. Supp. 2d 1267, 1270 (S.D. Fla. 2013).

---

outside of "traditional settlement negotiations" and "distinguished it from direct attachment to the litigation." *See Krig*, 611 F. Supp. 2d at 1329.

5

**E. The state injunction did not survive dismissal & the Supremacy Clause bars it.**

The dismissal order with leave to amend, which included a preliminary injunction against Mr. Jowers, was a non-final interlocutory order which did not survive voluntary dismissal. *See Hibbard v. State Road Dept. of Fla.*, 225 So.2d 901 (1969) (Order dismissing complaint with leave to amend was interlocutory in nature.); *Hecht Consulting Corp. v. Manors of Inverrary Xi Ass'n*, 125 So. 3d 267, 268-69 (Fla. 4th DCA 2013); *Skinner v. Skinner*, 579 So. 2d 358, 359-60 (Fla. 4th DCA 1991) (interlocutory order directing husband's payment of wife's medical bill did not survive final judgment into which all interlocutory matters merged; the trial court could have reduced the arrearage to judgment in the final judgment, but since the final judgment was silent as to the arrearage, the wife was not entitled to recover it). And if the state judge attempted to limit Mr. Jowers' right to bring claims in federal court, the Supremacy Clause permits Mr. Jowers to bring them because it "is not within the power of state courts to bar litigants from filing and prosecuting *in personam* actions in the federal courts." *Gen. Atomic Co. v. Felter*, 434 U.S. 12, 12 (1977).

**F. The claims arise from a core bankruptcy proceeding and the Court should not abstain.**

"[B]ankruptcy courts exercise broad discretion to determine the true nature of the asserted claims because they are the courts "in the trenches" of the entire bankruptcy case. Unlike the district court, the bankruptcy court has in-depth, first-hand knowledge of how an adversary proceeding relates to and impacts the progress of a main bankruptcy case." *Menotte v. Keough (In re Nat'l Fin. Holdings, Inc.)*, Nos. 21-16989-BKC-MAM, 22-01243-MAM, 2023 Bankr. LEXIS 2261, at *13 (Bankr. S.D. Fla. Sep. 14, 2023). Counsel and its pattern of abusive attempts to collect the debt directly relate to and impact the progress of the Chapter 11 case. In fact, Counsel still has not released the undersigned attorney from a state court writ of garnishment it served on him to collect its judgment. That has frustrated payment of Mr. Jowers' lawyers in these proceedings. *See* ECF 39 at ¶ 35. Its argument that these claims do not relate to a core bankruptcy proceeding is

frivolous. *See Stern v. Marshall*, 564 U.S. 462, 476, 131 S. Ct. 2594, 2605 (2011). As to the *In re United Container LLC*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002), factors, they demonstrate that this case should remain before this Court. (1) if these claims are not permitted, Counsel and Mr. Kinney will be further emboldened to harass Mr. Jowers and his family—thereby frustrating the administration of these proceedings. (2) The case law espoused by the Eleventh Circuit in the FDCPA and FCCPA guides this Court. (3) Given that Counsel has flagrantly violated the FCCPA, the claims are not necessarily difficult or novel. (4) There are no current state court proceedings—the FCCPA case was dismissed without prejudice. The only state proceeding is the one instituted by Counsel to enforce the judgment and enforce the writs of garnishment it served on the undersigned, which continue to violate the automatic stay. (5) The jurisdictional basis of the FCCPA claims are that they are compulsory and arise from diversity jurisdiction. (6) and (7) The FCCPA claims directly relate to the underlying bankruptcy and a core proceeding because they relate to how much (if anything) Mr. Jowers will end up paying Counsel and directly relate to whether he is entitled to a setoff. (8) It is not feasible to sever the state law claim because Mr. Jowers would have to obtain counsel to prosecute claims in state court, the claims are now barred by the statute of limitations, the state judge already held that there is no personal jurisdiction over Counsel in Alachua County (thereby rendering it impossible to prosecute the case there absent it dismissing the claim and having a lengthy appeal), and it would be much easier to adjudicate them in this Court. (9) Because Counsel instituted these adversarial proceedings in the first instance—counterclaims will not burden the Court or needlessly multiply the proceedings. (10) There is no forum shopping issues because these are counterclaims against Counsel subjecting it to personal jurisdiction in this Court, (11) Mr. Jowers waived his jury trial rights. (12) Mr. Jowers is the only debtor party. (13) There are no comity issues because the injunction was a non-final interlocutory

order which dissolved by way of voluntary dismissal of the action (and in the context of federal counterclaims, the injunction violated the Supremacy Clause and automatic-stay). And (14) no party will face any prejudice. Mr. Jowers claims are core to the bankruptcy proceeding because they directly relate to the Loans that Counsel is making a claim on. Further, whether Mr. Jowers can recover damages and attorneys fees against Counsel directly relates to how much legitimate creditors can recover when a plan is successfully confirmed. The Court should not abstain.

**G.  Counsel's argument that Mr. Jowers did not state a claim is frivolous.**

"Consumer debt" is defined as "**any obligation** . . . of a consumer to pay money *arising out of a transaction* in which the money, property, insurance, or services *which are the subject of the transaction are primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment." § 559.55(6). *Williams v. Salt Springs Resort Ass'n, Inc.*, 298 So. 3d 1255, 1257 (Fla. 5th DCA 2020). Counsel muddies the waters by offering a self-serving narrative that it was merely trying to seek collection of the entire $3,640,132.60 judgment, *i.e.* the Loans should be ignored because they are "a mere 0.4% of the total" instead acknowledging that it unlawfully coerced Mr. Jowers to fulfill obligations to pay tens of thousands of dollars which arose from thise Loans, *i.e.*, transactions which were offered to pay for his "personal needs," "a vehicle," and "general expenses" primarily for his personal use. It cited no case law to support its baseless legal conclusions because no such support exists. His obligation to pay Counsel clearly arose from the Loans, which are personal and consumer debts. The Forgivable Loan Agreement states: "Whereas, Employee has requested that the Company loan Employer Fifty Thousand Dollars ($50,000.00) for the purpose of purchasing *a vehicle and other "general expenses."* Forgivable Loan Agreement Page 1. The Revolving Loan Agreement also states: "Lender and Debtor desire to cancel the Old Debt and enter into a new revolving loan agreement for a revolving line of credit in the maximum principal sum of One Hundred Fifty Thousand and No/100 Dollars

8

($150,000.00) for the purpose of financing short term *personal needs* of Debtor." Revolving Loan Agreement Page 7. Here, the consumer debts at issue are the "forgivable loan," allegedly worth $26,204.90, originally $14,690.04 with an interest of $3.78 per day, and the Revolving Loan Agreement concerning the loan of $150,000. *See* the Revolving Loan Agreement. Counsel's assertion that it's and Mr. Kinney's threats were not predicated on a "consumer debt" is frivolous. An obligation from a judgment can still be a consumer debt under Florida law. *See Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950. (11th Cir. 2016). Here both loan agreements evidence that Mr. Jowers' debt and judgment arose from a "transaction". This is because, but for the contracts specifying repayment under the lines of credit and the forgivable loan, Mr. Jowers would not have any legal duty to pay Counsel. Even if misappropriation of trade secrets are excluded from the FCCPA, the debts resulting from personal contractual obligations, such as the lines of credit and forgivable loans fall squarely within the ambit of the statute.

And Counsel's arguments that Mr. Jowers did not state a claim are similarly frivolous and misleading. Mr. Kinney's threats against him and his family were written to abuse them, and caused immense emotional distress and panic. Counsel threatened to humiliate them by recording its agents repossessing Mr. Jowers' mother's vehicle and his wife's clothing § 559.72(9), Fla. Stat. Counsel made such threats even it knew that it had no legal right to take such actions. ECF 39 at ¶¶ 4; 42; 51; 61.

As to § 559.72(14), Counsel's argument that it did not violate the FCCPA as a result of its threat to *literally send a video crew* to travel to his mother's residence and film law enforcement take her vehicle so Counsel and Mr. Kinney could then publish it on YouTube is so off base and misleading that it should concern the Court regarding candor to the tribunal. The statute not only

9

prohibits the publishing of deadbeat lists—*but also threatening to*. See § 559.72(14).[3] And three times in one day is enough for liability under the FCCPA to find liability under 559.72(7).

**H. Leave to amend should be permitted if dismissal is granted.**

If the Court dismisses the claims, Mr. Jowers requests leave to amend. Post-petition, Mr. Kinney and Counsel did not release Mr. Jowers from a subpoena summoning him to the Western District of Texas for a "debtor's interview" after they had been put on notice of the bankruptcy proceedings and automatic stay. Further, post-petition, they caused a receiver to garnish his bank accounts before his attorneys intervened and notified the bank. Moreover, they caused the Hong Kong secret police called the "ICAC" to harass and investigate Mr. Jowers to collect this consumer debt. Furthermore, on November 14, 2023, Counsel caused a writ of garnishment to be issued by the Seventeenth Judicial Circuit of Florida in *Counsel Holdings, Inc. vs. Evan P. Jowers* in Case Number 23-013248 against Mr. Jowers' attorneys, Zermay Law, P.A. and Almazan Law, to enforce the judgment stemming from the Loans. Despite this bankruptcy, Counsel and its attorneys have made no effort to dissolve the writs of garnishment or stay that case.

**G. Conclusion.**

**WHEREFORE** for all these reasons stated *supra*, Counsel's motion to dismiss should be denied, and in the alternative, the Court should grant Mr. Jowers leave to amend.

DATED: March 24, 2025    Respectfully Submitted,
    **ZERMAY LAW, P.A.**

    Zachary Z. Zermay, Esq.
    Florida Bar №: 1002905
    3000 Coral Way, Suite 1115
    Coral Gables, FL 33145
    Email: zach@zermaylaw.com
    Telephone: 239-699-3107
    *Attorney for Debtor*

---

[3] "In collecting consumer debts, no person shall: [p]ublish or post, *threaten to publish or* post, or cause to be published or posted before the general public individual names or any list of names of debtors, commonly known as a deadbeat list, for the purpose of enforcing or attempting to enforce collection of consumer debts."